UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN FALCON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER VICTORIA KUHN ESQ., *et al.*,<br><br>        Defendants. | Case No. 25–cv–07240–ESK–EAP<br><br>OPINION AND ORDER |

    **THIS MATTER** is before the Court on *pro se* plaintiff Alan Falcon's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Complaint). (ECF No. 1.) He has also filed a motion for a temporary restraining order (Motion). (ECF No. 2.) Because plaintiff is a prisoner seeking damages from government employees, I must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a)–(b). For the following reasons, I will allow the Complaint to proceed in part.

### BACKGROUND & PROCEDURAL HISTORY

    1.    Plaintiff is a convicted and sentenced state prisoner presently detained in East Jersey State Prison (East Jersey). On or about January 25, 2023, plaintiff was detained in Garden State Youth Facility (Garden State) in cell 208 of the East 2A Wing housing unit. (ECF No. 1 ¶¶ 16, 17.)

    2.    He frequently saw Garden State officer Hebrew failing to complete his security checks, security cell checks, or walk throughs. (*Id.* ¶ 18.) Plaintiff alleges Hebrew's inaction led to thefts in the unit by prisoners going into other prisoners' cells. (*Id.* ¶ 19.) Plaintiff asserts the thefts continued from January 2023 to December 2023. (*Id.* ¶ 20.)

    3.    According to plaintiff, Hebrew was aware that inmate McCall had committed some of the thefts and "had out for plaintiff" because plaintiff had made complaints about his cell door being open and items going missing. (*Id.* ¶ 21.)

4. On December 30, 2023, plaintiff encountered McCall and three other prisoners around 9:00a.m. (*Id.* ¶ 22.) McCall and the other prisoners attacked plaintiff in the East 2A day room. (*Id.* ¶ 23.) Plaintiff was kicked in the head and knocked unconscious by the four prisoners. (*Id.* ¶¶ 24, 25.) Hebrew witnessed the assault but did not call a code or alert his supervisor. (*Id.* ¶ 26.)

5. Unidentified prisoners carried plaintiff to his cell where he was unconscious on the floor for approximately 30 minutes to an hour. (*Id.* ¶¶ 25, 27.) Hebrew failed to conduct security checks or walkthroughs during this time. (*Id.* ¶ 28.)

6. Hebrew arrived at plaintiff's cell around 10:00 a.m. on December 30. (*Id.* ¶ 29.) Plaintiff was still unconscious and failed to respond to Hebrew's call. (*Id.* ¶ 30.) Hebrew called a medical code at that time. (*Id.* ¶ 31.)

7. Plaintiff woke up around noon in Capital Health Hospital in Trenton. (*Id.* ¶ 32.) He was told that he had a concussion and bleeding in his brain. (*Id.* ¶ 33.) Nobody notified plaintiff's mother about the assault. (*Id.* ¶ 34.)

8. Plaintiff remained in the hospital until January 2, 2024 when he was transferred back to Garden State. (*Id.* ¶ 35.) He was placed into the infirmary. (*Id.* ¶ 36.) No prison official came to speak to plaintiff about the incident. (*Id.* ¶ 37.)

9. Plaintiff was transferred to East Jersey on January 8, 2024. (*Id.* ¶ 38.) A neurologist specialist has been treating the bleeding in plaintiff's brain. (*Id.* ¶ 40.) He has been experiencing head pain since the assault. (*Id.* ¶ 42.)

10. No one from Garden State has ever contacted plaintiff to investigate the assault. (*Id.* ¶ 41.)

11. Plaintiff filed the Complaint on June 4, 2025 against defendants Hebrew, New Jersey Department of Corrections (Department) Commissioner Victoria Kuhn, former Department Commissioner Willie Bonds, Garden State Administrator Doe, Garden State Supervisor Doe, Garden State Major Doe, Garden State Lieutenant Doe, and Garden State Sergeant Doe (collectively Garden State supervisors). (*Id.* p. 1.) He raises claims of failing to protect, failure to intervene, failure to train, failure to investigate, and conspiracy to coverup and destroy evidence of the assault. (*Id.* ¶ 45.)

## DISCUSSION

12. The Prison Litigation Reform Act requires a district court to *sua sponte* screen a civil complaint filed by a prisoner seeking damages from a government entity or employee and to dismiss any claim that is frivolous,

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit.  28 U.S.C. § 1915A(a)–(b).

13.  To survive a *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

14.  "The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim."  *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).  Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

15.  I will dismiss plaintiff's claims that defendants failed to train Hebrew and conspired to coverup and destroy evidence of the assault.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018).  "After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, the rule is clear that the plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  *Id.* at 295 (internal quotation marks omitted).  Plaintiff has not submitted any facts from which I could reasonably draw such conclusions against defendants.

16.  To state a claim based on a supervisory defendant's failure to train a subordinate, plaintiff must provide sufficient facts that, if true, would show: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure."  *Womack v. Moleins*, No. 10–cv–02932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014)).  "[F]ailure to adequately train or supervise can only constitute deliberate indifference if the failure has caused a pattern of violations."  *Id.*; *Connick v.*

*Thompson*, 563 U.S. 51, 62 (2011) (holding that "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train").

17. Plaintiff has not provided any facts that would suggest there was a history of prisoner assaults tied to Hebrew's alleged failure to conduct regular security checks. According to plaintiff there was a history of thefts in the housing unit, (ECF No. 1 ¶ 19), but that is different than a history of prisoners assaulting each other. There are no facts from which I can reasonably infer that Kuhn, Bonds, or any of the Garden State supervisors were aware of an unreasonable risk that prisoners could be assaulted but failed to act. Therefore, I will dismiss the failure to train claims without prejudice.

18. Plaintiff further alleges that defendants failed to investigate after the assault. (ECF No. 1 ¶ 37.) This claim is analogous to a claim of failing to respond to a grievance, and "because a prisoner has no free-standing constitutional right to an effective grievance process, plaintiff cannot maintain a constitutional claim against defendant based upon his perception that he ignored and/or failed to properly investigate plaintiff's grievances." *Darby v. Hughes*, No. 25–cv–12104, 2025 WL 2610277, at *3 (D.N.J. Sept. 10, 2025) (cleaned up). I will dismiss this claim as well.

19. According to plaintiff, Hebrew was aware that McCall "had out" for plaintiff because he made complaints about McCall stealing but did not take action to protect plaintiff. (ECF No. 1 ¶ 21.) Plaintiff also asserts that Hebrew was also present during McCall's assault on plaintiff but did not intervene. (*Id.* ¶ 26.) He also claims Hebrew did not call a medical code for at least 30 minutes after the assault. (*Id.* ¶¶ 29, 30, 31.) Assuming the truth of these allegations for screening purposes only, plaintiff has stated failure to protect, failure to intervene, and deliberate indifference to medical needs claims against Hebrew.[1]

20. Plaintiff's request for injunctive relief will also be dismissed. He seeks an order requiring defendants to continue to provide him access to the neurologist. (ECF No. 1 ¶ 49.) Federal Rule of Civil Procedure 65(b)(1) "limits the Court's ability to issue a [temporary restraining order] to instances

---

[1] These claims may only proceed against Hebrew in his individual capacity as he is immune from suit in his official capacity. Additionally, my preliminary review under 28 U.S.C. § 1915A does not determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by a defendant after service. *See Richardson v. Cascade Skating Rink*, No. 19–cv–08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] §1915[A] screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

when (i) the 'specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the' party seeking the [temporary restraining order] and (ii) the party seeking the [temporary restraining order] 'certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Kenny v. Toms River Twp. Bd. of Adjustment*, No. 18–cv–11461, 2018 WL 4442231, at *1 (D.N.J. Sept. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

21.   I find that plaintiff fails to make the specific factual showing required to establish immediate and irreparable injury, loss, or damage. There are no facts in the Complaint that suggests defendants are withholding medical treatment from plaintiff.

Accordingly,

**IT IS** on this   **4th** day of **November 2025**   **ORDERED** that:

1.   Defendants Victoria Kuhn, Willie Bonds, Garden State Administrator Doe, Garden State Supervisor Doe, Garden State Major Doe, Garden State Lieutenant Doe, and Garden State Sergeant Doe are dismissed from this action without prejudice.   28 U.S.C. § 1915A(b)(1).

2.   Plaintiff's request for injunctive relief is denied.

3.   The failure to protect, failure to intervene, and deliberate indifference to medical needs claims may proceed against Garden State officer Hebrew in his individual capacity only.   The official capacity claim, failure to investigate claim, and conspiracy claim against defendant Hebrew are dismissed.

4.   Pursuant to the Memorandum of Understanding[2] between the Court and the New Jersey Department of Corrections, the Court shall forward a copy of the Complaint to the Department and seek a waiver of service for defendants. A separate order detailing this process will follow.

---

[2] The Memorandum of Understanding between all vicinages of the United States District Court for the District of New Jersey and the New Jersey Department of Corrections governs the process for obtaining waiver of service, where possible, for the Departments' current and former employees.

5. The Clerk shall send a copy of this opinion and order to plaintiff by regular mail.

    /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**